## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHAN HOOSIER, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| v. | Civil Action No. 15-3839 (JBS) |
| NORTHERN STATE PRISON and THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | **OPINION** |
| Respondents. | |

**APPEARANCES:**
Rashan Hoosier
449356/983453B
Southern State Correctional Facility
Unit #7
4295 North Delsea Drive
Delmont, New Jersey 08314
    *Plaintiff Pro Se*

Alexis R. Agre, Esquire, Assistant Prosecutor
Jennifer L. Bentzel, Esquire, Assistant Prosecutor
Burlington County Prosecutor's Office
New Courts Facility
49 Rancocas Road
Mount Holly, New Jersey 08060
    *Attorneys for Respondents*

**SIMANDLE, District Judge:**

I.    <u>INTRODUCTION</u>

Rashan Hoosier ("Petitioner") has submitted a petition ("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF 1.) Respondents Northern State Prison and the Attorney General of the State of New Jersey ("Respondents") oppose the Petition. (ECF 6.) For the reasons stated herein, the

Petition shall be denied and no certificate of appealability shall issue.

## II.  <u>BACKGROUND</u>

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will reproduce the recitation of facts as set forth by the Appellate Division of the Superior Court of New Jersey ("Appellate Division") in its June 20, 2013 written opinion. *State v. Hoosier*, No. A-3891-10T4, 2013 WL 3064507, at *1 (N.J. Super. Ct. June 20, 2013). (ECF 6-44 at 1-2.) The Appellate Division affirmed the October 1, 2010 opinion (ECF 6-39) of the Law Division of the Superior Court of New Jersey ("Law Division") denying Petitioner's petition for post-conviction relief ("PCR").

The Appellate Division discerned the following facts and procedural history from the record on appeal:

From March through August 2002, grand juries in Burlington County, New Jersey returned nine indictments against Petitioner, containing a total of thirty-eight counts. The charges included

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

five counts of first-degree armed robbery, N.J. Stat. Ann. §
2C:15-1, and a host of weapons, assault, conspiracy, resisting
arrest, and other offenses. Petitioner was accused of committing
store robberies, street muggings, assaults on police officers,
and crimes related to those incidents. *See Hoosier*, 2013 WL
3064507, at *1.

At the time of the indictments, the twenty-four-year-old
Petitioner already had an extensive juvenile offense history,
including charges of robbery and assault, and he had also been
convicted as an adult several times on charges disposed of in
municipal courts and twice in the Superior Court for indictable
offenses. He had previously been sentenced to five years in
state prison for committing a robbery. If convicted of one or
more of the first-degree armed robbery charges in the pending
indictments, Petitioner was subject to a potential extended-term
sentence pursuant to N.J. Stat. Ann. § 2C:44-3, which meant that
he was exposed to a maximum possible sentence of life
imprisonment. In addition, because the indictments pertained to
separate crimes at different times and against different
victims, he could have been sentenced to consecutive terms on
one or more of the indictments. *See id*.

In October 2002, Petitioner entered into a plea agreement
with the Burlington County Prosecutor's Office and pleaded
guilty to two counts of armed robbery. The State agreed to

dismiss the other thirty-six counts and to recommend two concurrent terms of twenty years' imprisonment, one of which was subject to the parole ineligibility and special five-year parole provisions of the No Early Release Act (NERA), N.J. Stat. Ann. § 2C:43-7.2. As part of the plea agreement, Petitioner agreed to waive his right to appeal. In March 2003, the court sentenced Petitioner to seventeen years in prison subject to NERA. *Hoosier*, 2013 WL 3064507, at *1.

Despite the terms of the plea agreement, Petitioner filed a notice of appeal on January 26, 2004. On April 29, 2004, the State filed a letter with the Appellate Division stating that Petitioner had violated the terms of his plea agreement by appealing his convictions and that, pursuant to New Jersey Rule of Court 3:9-3(d), the State would seek to annul the plea agreement. The State requested a remand to the Law Division so that it could file a motion to withdraw from the plea agreement. After defense counsel confirmed that Petitioner wished to pursue his appeal, the Appellate Division entered an order on June 10, 2004, granting the State's application for remand. *Hoosier*, 2013 WL 3064507, at *1. The June 10 order stated:

> Pursuant to *R.* 3:9-3(d), the matter is remanded to the Law Division so that the State may annul the plea agreement and for restoration of all charges. The appeal is dismissed.

(*Id.* at *2.)

4

After the remand, however, the State did not move
immediately to annul the plea agreement and to reinstate the
charges. Defense counsel and the prosecutor proceeded under the
erroneous belief that the Appellate Division order's reference
to dismissal of the appeal meant that Petitioner was no longer
in breach of the waiver provision of his plea agreement. The
prosecutor consulted with defense counsel and then wrote to the
trial court on June 23, 2004, that it was "no longer necessary
for the State to pursue [its] motion" to annul the plea
agreement because Petitioner's appeal had been dismissed. (*Id.*)

For the next two years, Petitioner continued to serve his
seventeen-year prison sentence, but he made requests of the
Public Defender's Office to reinstate his appeal. In August
2006, Petitioner filed a pro se PCR petition alleging
ineffective assistance of counsel leading to his guilty pleas.
He sought to vacate his convictions and sentence. The
prosecutor's office reviewed the matter and determined that
Petitioner had not intended to abandon his prior appeal to the
Appellate Division. In early 2007, almost three years after the
Appellate Division's June 2004 order remanding the matter to the
Law Division, the State finally filed a motion to annul the 2003
plea agreement and to reinstate the nine indictments. (*Id.*)

The Law Division heard the motion on May 18, 2007. New
counsel for Petitioner explained that she had discussed the

matter with Petitioner and informed him that his pursuit of an
appeal gave the State the right to annul the prior plea
agreement, that the original charges of the nine indictments
would be reinstated, and that, because of his prior criminal
record and the nature of the offenses, he faced a substantially
heavier sentence than the seventeen years imposed if he chose to
proceed to trial on the several charges. The court spoke to
Petitioner directly, repeating that his actions would expose him
to higher sentences than he was serving and asking whether he
still wished to pursue an appeal of the original convictions.
Petitioner answered yes. (*See* ECF 6-48 at 5-6.) The court then
granted the State's motion to annul the 2003 plea agreement and
reinstated the indictments for trial, entering an order to that
effect on June 28, 2007. With the convictions vacated, the court
set bail at $200,000 pending trial of the charges. Petitioner
posted a bail bond and was released from custody. *See Hoosier*,
2013 WL 3064507, at *2.

A year later, on May 18, 2008, the date scheduled for trial
of one of the indictments, Petitioner appeared before the trial
court and entered into a new plea agreement with the
prosecutor's office. The new plea agreement was similar to the
previous one in that Petitioner agreed to plead guilty to two
counts of first-degree armed robbery in exchange for the State's
recommendation of twenty years' imprisonment subject to NERA.

Again, the plea agreement indicated that Petitioner agreed to a "waiver of appeal." Pursuant to the second plea agreement, Petitioner entered pleas of guilty to two charges of first-degree armed robbery. *See id.*

On August 8, 2008, the court conducted a sentencing hearing at which it heard extensively from Petitioner and his family members and friends requesting leniency. The court found that aggravating factors three, six, and nine were applicable to Petitioner's sentence. N.J. Stat. Ann. § 2C:44-1(a)(3), (6), (9). The court considered several mitigating factors under N.J. Stat. Ann. § 2C:44-1(b) as argued by defense counsel, but the court did not find any that were applicable. The court sentenced Petitioner to twenty years' imprisonment subject to NERA. *See Hoosier*, 2013 WL 3064507, at *3.

The Public Defender's Office filed a notice of appeal on behalf of Petitioner but then withdrew it on April 22, 2009, with a notation from Petitioner that he had not requested that a direct appeal be filed from the second conviction and sentence. On July 9, 2009, however, Petitioner filed a second PCR petition. He alleged ineffective assistance of counsel at the sentencing phase following his second guilty plea and by his first PCR attorney. He also alleged infringement of his due process rights on the ground that his sentence of twenty years

7

imprisonment was a "vindictively motivated harsher sentence" than his original sentence of seventeen years. *See id.*

On August 20, 2010, the New Jersey Superior Court (albeit a different Judge than the sentencing Judge) heard argument on Petitioner's PCR petition and denied it by oral opinion, subsequently entering the order of October 1, 2010. *See id.* (*See also* ECF 10 at 19-28 (summarizing procedural history as to State's twenty-year plea offers both in 2003 and in 2008; and Judge Thomas S. Smith, Jr.'s March 28, 2003 and August 8, 2008 considerations of various aggravating and mitigating factors as to Petitioner's sentencings).)

Petitioner appealed denial of PCR (ECF 6-41; ECF 6-42), asserting various ineffective assistance of counsel claims as well as claims for an evidentiary hearing. (*Id.*)

The Appellate Division "f[ound] no merit in any of [Petitioner's] arguments," pointing out:

> This appeal has a convoluted procedural
> history, but the essence of it is that
> defendant obtained the relief he originally
> sought — his 2003 conviction after a guilty
> plea was vacated and he had a second
> opportunity either to stand trial on a
> multitude of indictments or to enter into a
> new plea agreement. He chose the latter
> option and pleaded guilty a second time. He
> now appeals from denial of his PCR petition
> after the second guilty plea. It appears
> that defendant seeks relief that he is
> simply not entitled to, namely, a capping of
> his sentencing exposure in accordance with
> the original guilty plea and sentencing

> without his complying with all the
> conditions of that first plea agreement.

*Hoosier*, 2013 WL 3064507, at *1, *3.

This Court now reviews the submissions of the parties and denies the Petition, for the reasons explained below.

**III.** **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 425, *reh'g denied*, 134 S. Ct. 2835 (2014). Habeas courts must presume that state court factual findings are correct unless petitioners rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner raises the following points in Grounds One, Two, and Three of the Petition for this Court's review:

I. Ground One: "Vindictive sentence in violation of Due Process" (ECF 1 at 6.)

II. Ground Two: "Ineffective Assistance of Counsel" (*Id.* at 8.)

III. Ground Three: "Double Jeopardy" (*Id.* at 9.)

The Court now addresses these points in turn:

### A. Ground One: Petitioner's Claim of Vindictive Sentence in Violation of Due Process

Petitioner claims that he "was sentenced to [a] harsher sentence after [his] first conviction was vacated as a result of defendant exercising his constitutional right to review of illegal sentence." (ECF 1 at 6.) In his pro se brief supporting

his Petition, he contends that: "[t]he sentencing judge failed to support his harsher sentence with a credible and justifiable reason" (ECF 10 at 5); the PCR court "mistakenly neglected to rule on the claim that the sentence, ... after his first conviction was set aside ... was vindictively motivated" (*id*. at 2); and "[o]n appeal of denial of the 2010 PCR, the Appellate Court gave some attention to the vindictive sentence claim, however, it was very limited." (*Id*. at 3.)

Petitioner's recitation of the purported procedural history of this case is contrary to the record. Petitioner's PCR petition claimed that his "Constitutional right to due process was violated when [P]etitioner received a vindictively motivated harsher sentence." (ECF 6-35 at 12.) Contrary to Petitioner's contention in his brief supporting his habeas Petition (ECF 10 at 2), the Law Division PCR court *did* address his vindictive sentence claim, as follows:

> Defendant additionally argues that the prosecution against him the second time was vindictive as a result of his filing a post-conviction relief application. However, this Court finds no evidence for that assertion. But, rather, that the State simply realized once the post-conviction relief application was filed that they had acted erroneously with regard to leaving this matter essentially in limbo subsequent to the Appellate Division's Order which had restored the charges and dismissed the defendant's appeal. Certainly, the State could not have acted any other way at this juncture but to correct their error and

> proceed with the matter ... Neither the
> State nor the Court was obligated to ask for
> or give him the same sentence that he got
> the first time.

(ECF 10 at 29.) The Appellate Division agreed with the Law

Division, as follows:

> We find no showing in this record that the
> twenty-year sentence was vindictive. At
> defendant's original sentencing in 2003, the
> trial court imposed a lower sentence than the
> terms of his first plea agreement, but it was
> under no obligation to do so again after
> defendant caused his plea agreement to be
> annulled and then pleaded guilty a second
> time. When defendant decided not to adhere to
> the terms of the first plea agreement and to
> pursue an appeal, the court and his own
> attorney explained to defendant that he was
> giving up the seventeen-year sentence in
> exchange for his right to stand trial on all
> the charges contained in the nine indictments
> and that the charges exposed him to a much
> more severe sentence, possibly up to life
> imprisonment. Defendant insisted on pursuing
> that option. When the time came to stand
> trial, he changed his mind and again opted for
> a plea agreement with a twenty-year maximum
> potential sentence.
>
> Because of defendant's extensive criminal
> record and the number of charges that were
> being disposed through the plea agreement, the
> twenty-year sentence was not unjust or
> vindictive; it was simply the sentence that
> defendant bargained for when he pleaded guilty
> a second time. He had no right to cap his
> exposure to seventeen years in prison while he
> exercised his right to stand trial or to enter
> into a new plea agreement with the State.

2013 WL 3064507, at *5-6.

Beyond his erroneous procedural history contentions, Petitioner's legal claim itself is fatally flawed because the Appellate Division's affirmance of the denial of PCR was neither contrary to, nor an unreasonable application of, clearly established federal law.

In *North Carolina v. Pearce,* 395 U.S. 711 (1969), the Supreme Court stated that "Due Process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. As the Court explained in *United States v. Goodwin,* 457 U.S. 368 (1982), *Pearce* creates a "presumption of vindictiveness" when the same trial judge imposes a harsher sentence following a new trial after the defendant had successfully appealed his/her original conviction, which presumption "may be overcome only by objective information in the record justifying the increased sentence." *Id.* at 374; *see also Chaffin v. Stynchcombe,* 412 U.S. 17, 27 (1973) (finding that the *Pearce* presumption derives from the judge's "personal stake in the prior conviction"). The *Pearce* rule, however, "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." *Texas v. McCullough,* 475 U.S. 134, 138 (1986). Where there is no "reasonable likelihood" that "the increase in sentence is the product of actual vindictiveness on the part of the sentencing

authority ... the burden remains upon the defendant to prove actual vindictiveness." *Alabama v. Smith,* 490 U.S. 794, 799-800 (1989) (reiterating that the Supreme Court has "limited [*Pearce*'s] application" to "[s]uch circumstances [as] those in which there is a 'reasonable likelihood,' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority") (omitting citation).

Petitioner contends that the sentencing court vindictively enhanced his prison sentence as a result of his filing a PCR application. (ECF 1 at 6.) He contends that the sentencing judge "granted a mitigating factor in the first sentence and based the lesser sentence on that factor, as well as other considerations ... In the second sentence, Judge Smith refused to grant the same mitigating factor and failed to acknowledge the considerations he gave weight to in the first sentencing proceedings." (ECF 10 at 7.)

However, the Appellate Division's upholding of Petitioner's twenty-year sentence[2] is neither contrary to, nor an unreasonable

---

[2] *Hoosier*, 2013 WL 3064507, at *5-6 (affirming the Law Division's denial of PCR and rejecting Petitioner's vindictive sentence argument "[b]ecause of defendant's extensive criminal record and the number of charges that were being disposed through the plea agreement[.] [So], the twenty-year sentence was not unjust or vindictive; it was simply the sentence that defendant bargained for when he pleaded guilty a second time").

application of, United States Supreme Court precedent in *Pearce*
and its progeny.

Petitioner "pled guilty to two first degree offenses [that]
are very serious offenses. There are very few more serious
offenses in our criminal code," as Judge Smith noted. (ECF 6-50
at 13) (noting that "there were [also] a number of other matters
that are being dismissed"). Prior to the offenses giving rise to
the indictments against Petitioner, his prior criminal record
dates back to juvenile offenses from 1991 through 1996,
including robbery, infliction of bodily injury, trespass, theft
by unlawful taking, and possession of an imitation drug. (ECF 6-
50 at 14-15.) His adult offense record dates back to 1997,
including defiant trespass, receiving stolen property, robbery,
and violation of parole. (*Id.* at 15-16.) This is a protracted
length of criminal history, and the trial judge properly
considered this objective and material information in imposing
an increased sentence following retrial. *See McCullough,* 475
U.S. at 142 ("Nothing in the Constitution requires a judge to
ignore  objective information ... justifying the increased
sentence.") (internal quotation and citation omitted). In
fashioning Petitioner's 2008 sentence, Judge Smith -- as he had
with Petitioner's first sentence in 2003 (ECF 6-14) -- found
that aggravating factors three, six, and nine applied. (ECF 6-
31.) Judge Smith based the factors on Petitioner's adult and

juvenile records, and the fact that Petitioner had been sentenced to State Prison and Jamesburg. (ECF 6-47 at 12-14.)[3]

Of particular note, the trial judge during the 2008 sentencing hearing exhibited no signs of animosity toward Petitioner. In fact, Judge Smith's demeanor toward Petitioner was exactly the *opposite* of vindictive, saying at the August 8, 2008 hearing:

> [W]ith the advent of our new criminal code, which is 2C, ... a sentencing court has to take a look at the offense first and the offender second ... That sentencing scheme also changed the amount of discretion that a court has in sentencing ...
>
> And I give this little speech so that the family and Mr. Hoosier understands that I don't have the enormous discretion to do all the things that maybe you think I ought to do ... I actually took a risk with Mr. Hoosier, because by all accounts, at the time he pled guilty, I should've revoked his bail. But one thing Mr. Hoosier did he is came to court. You always came to court. So I didn't do that ...
>
> But he is facing two serious offenses. He was

---

[3] Petitioner alleges that Judge Smith "granted a mitigating factor in the first sentence and based the lesser sentence on that factor." (ECF 10 at 7.) Based on this Court's review of the record, Petitioner's habeas contention appears to relate to mitigating factor 12 (willingness to cooperate with law enforcement), which Judge Smith found in the first case (ECF 6-14 at 2) but not the second one. (ECF 6-31 at 2; ECF 6-50 at 19 (rejecting mitigating factor 12).) Judge Smith rejected application of mitigating factor 12 in the second trial because "[c]ooperating in that he pled guilty" is "not exactly what mitigating factor 12 is about." (ECF 6-50 at 19.) Petitioner has not presented any evidence or argument demonstrating that Judge Smith's determination on this point was constitutionally defective.

charged with a number of other ones, very
similar offenses, robberies, and as such, I
have to sentence him pursuant to what he pled
guilty to. It is never easy for this Judge to
sentence people to substantial prison
sentences because I know I have enormous
authority to deprive people of their liberty.
But that's what I have to do in this case. But
as I told your mother earlier on, Mr. Hoosier,
if I were mad at you, or if I had any other
negative thoughts about you, it would've been
very easy for me to revoke your bail and put
you in at the time that you pled guilty. But
I took a shot with you.

(ECF 6-50 at 6-7 and 12-13) (Defense counsel: "And I was told

that you guys [on the bench] are kind of pissed at him. Excuse

[me] for using that word. And my response was, 'I thought this

system was supposed to be a justice kind of system, not an ego

kind of system.' The Court: "If I was, in your words, 'pissed

at him,' I wouldn't have left him on the street after he pled

guilty. Okay. Under normal circumstances, I would've revoked his

bail and put him in. Okay. But he always came to court. So I

took a chance on him. So if I was mad at him, he wouldn't be on

the street today").)

Such a disclaimer supports the finding that Petitioner's

new sentence was the product of the trial judge's objective

reasoning rather than personal emotions. Judge Smith considered

the particular facts of Petitioner's life, conduct, habits, and

criminal history, along with the mitigating and aggravating

circumstances concerning the crime for which the court was to

17

sentence him in August 2008. (ECF 6-50 at 13-20, 17 ("The Court finds that the aggravating factors are of sufficient weight, based upon his prior criminal record, that, in fact, they warrant a sentence at the top of the sentencing range").) Given Judge Smith's demonstrated clemency in Petitioner's situation (*see* ECF 6-50 at 14 ("I took a shot with you")) and the fact that the court sentenced Petitioner within the statutory range of the charged offenses (ECF 6-31), the circumstances do not "demonstrate a 'reasonable likelihood that the increase in sentence [wa]s the product of actual vindictiveness on the part of the sentencing authority," and the *Pearce* rebuttable presumption of vindictiveness does not apply. *Balsavage v. Wetzel*, 545 F. App'x 151 (3d Cir. 2013) (internal citation omitted). Rather, "the twenty-year sentence was simply the sentence that defendant bargained for when he pleaded guilty a second time," as the Appellate Division ruled. *Hoosier*, 2013 WL 3064507, at *6. In short, even if the *Pearce* presumption were applicable (and this Court finds that it is not, for the reasons described *supra*), the record clearly presents sufficient evidence to rebut that presumption here.

Therefore, the Appellate Division's opinion affirming Petitioner's twenty-year sentence did not unreasonably apply, and was not decided contrary to, existing federal law.

For these reasons, habeas relief on Ground One is denied.

**B.   Ground Two: Petitioner's Claim of Ineffective
      Assistance of Counsel**

In Ground Two, Petitioner contends that assigned counsel in
his PCR proceedings, Anne T. Picker, Esquire "led [P]etitioner
to pursue a path that resulted in [P]etitioner's original
conviction being annulled ... [W]hen the State filed [a] motion
to annul [the] original plea, Ms. Picker failed to present an
option to challenge [the] State's motion. Her options were to
withdraw all action or conce[de] to [the] State's motion." (ECF
1 at 8) (referred to as Petitioner's "IAC Claim").)

The PCR trial court rejected Petitioner's IAC Claim as to
Ms. Picker, finding that Petitioner had not satisfied the first
prong of the constitutional standard -- that of deficient
performance -- for IAC claims under the Sixth Amendment:

> [S]he [Ms. Picker] enabled the defendant to
> have a new hearing [on May 18, 2007 (*see* ECF
> 6-48)] on the record before Judge Smith,
> even though he was not really entitled to
> such, as the [June 10, 2004] Appellate
> Division Order [dismissing the appeal and
> remanding for the State to annul the plea
> agreement and for restoration of all charges
> (*see* ECF 6-18)] was always in full force and
> effect. And the State could simply have
> proceeded to trial or other resolution as it
> ultimately did with regard to the defendant.
> Likewise, Ms. Picker explained in writing to
> the defendant all of the consequences of any
> decision that he might make.

(ECF 10 at 30.) (*See also* ECF 6-48 (Ms. Picker: "I discussed the
issues with Mr. Hoosier. I discussed the fact that if he pursues

this and the State says, well, then we want to move to vacate the plea, that it's not just the two cases that he pled guilty to that come back, it's everything that was dismissed, conceivably he could receive a sentence vastly in excess of that which he received as part of the plea").)

The Appellate Division also rejected Petitioner's IAC claim. Although not expressly spelled out in the Appellate Division's opinion, the court's written decision suggests that it did so for Petitioner's failure to satisfy either prong of the constitutional test for IAC claims as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hoosier*, 2013 WL 3064507, at *4-5. First, as to deficient performance, counsel was not ineffective because, before the June 2007 order was entered vacating the first plea agreement and reinstating the indictments "the court gave defendant the choice of maintaining his original plea agreement, and he clearly and unequivocally chose to withdraw from that first agreement." *Hoosier*, 2013 WL 3064507, at *4. Second, there was no unconstitutional prejudice from counsel's representation because:

> [A]n appeal of the court's decision vacating the original plea agreement would not have been successful since it was the relief that defendant himself was seeking. "[W]hen a defendant asks the court to take his proffered approach and the court does so, ... relief will not be forthcoming on a claim of error by that defendant." *State v. Jenkins,* 178 *N.J.* 347, 358 (2004).

> In addition, the State had a right to annul
> the first plea agreement once defendant filed
> an appeal in January 2004. [New Jersey] Rule
> [of Court] 3:9-3(d) ...
>
> The consequences of pursuing an appeal were
> again explained to defendant at the time of
> the State's motion in 2007 to annul the plea
> agreement. Defendant was given an opportunity
> to retain his 2003 plea agreement and the
> seventeen-year sentence that was imposed. He
> unequivocally stated that he wished to pursue
> an appeal, knowing that an appeal would result
> in annulling his plea agreement and sentence.
> Since he did not agree to abide by his
> obligation under the original plea agreement,
> the State had a right to annul that agreement
> and to reinstate the original charges.

*Hoosier*, 2013 WL 3064507, at *5.

Petitioner's IAC Claim in Ground Two fails because the state court's rulings were neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687. Second, the defendant must show that he was prejudiced by the deficient performance. *Id*. This requires showing that counsel's errors

deprived the defendant of a fair trial. *Id.*

As to *Strickland*'s first prong, counsel's performance is deficient if his or her representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Id*. at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id*.

As to *Strickland*'s second prong, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should

be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

When assessing an IAC claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id*. Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id*. (quoting C*ullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id*. (internal quotation marks and citations omitted). Ineffective assistance of appellate counsel is judged by the *Strickland* standard as well. *Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000)).

Here, the state court's rulings on Petitioner's IAC Claim were neither contrary to nor an unreasonable application of *Strickland* and its progeny.

First, the record flatly contradicts Petitioner's contention that "Ms. Picker's misrepresentation of [P]etitioner's legal options led [him] to pursue a path that resulted in [P]etitioner's original conviction being annulled." (ECF 1 at 8.) To the contrary, Petitioner himself chose his path -- in the face of cautionary advice *from both counsel and Judge Smith* as to the risks that his election posed:

> MS. PICKER: [I]f he wants to pursue his appeal, then the State has a right to, and did, file a motion asking the Court to vacate the plea. Alternatively, obviously, if he wants the appeal heard, the State also has a right, at this point, to withdraw the motion and let the appeal be heard or Mr. Hoosier has a right to say, no, I want to withdraw the appeal, PCR, the whole thing, and live with it as it -- as it is. I discussed the issues with Mr. Hoosier. I discussed the fact that if he pursues this and the State says, well, then we want to move to vacate the plea, that it's not just the two cases that he pled guilty to that come back, it's everything that was dismissed, conceivably he could receive a sentence vastly in excess of that which he received as part of the plea.
>
> ***
>
> THE COURT: Now, it's my understanding that given all of that you still wish to pursue your appeal, is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Are you making this decision freely and voluntarily?
>
> THE DEFENDANT: Yes.

THE COURT: Do you have any questions about
          anything?

          THE DEFENDANT: No.

(ECF 6-48 at 3, 6.)

     In light of Petitioner's voicing of his desire to move

forward with an appeal that he never wanted dismissed, it is

disingenuous for him to now argue that Ms. Picker was

ineffective after Petitioner achieved exactly what he wanted.

When a client realizes his or her sought-after results, that is

not defective performance. It is, rather, *more* than "reasonably

effective assistance." *See Jacobs v. Horn*, 395 F.3d 92, 102 (3d

Cir. 2005).

     Furthermore, there was no "misrepresentation" by counsel

(ECF 1 at 8) as to Petitioner's "legal options." (*Id*.) Both

counsel and Judge Smith presented Petitioner with the options

available to him, which Petitioner had been aware of since the

time of his original plea in 2002.[4]

     In addition, Ms. Picker was not ineffective for "fail[ing]

to present an option to challenge the State's motion [to annul

the original plea]." (*Id*.) New Jersey Rule of Court 3:9-3(d)

---

[4] "When taking defendant's original plea of guilty on October 21,
2002, the court ... stated to defendant: 'Now, you also understand
that as a result of this plea agreement, you are waiving your right
to appeal which means that if, in fact you do file an appeal in
this case, as you have a constitutional right to do, that the plea
bargain is no longer binding upon the State. Do you understand
that?' Defendant answered 'yes.'" *Hoosier*, 2013 WL 3064507, at *5.

provides the prosecutor with the option to annul the plea
agreement and restore the charges in the indictment in the event
a defendant files a timely appeal. In the context of the State
merely doing that to which it was procedurally entitled under
Rule 3:9-3(d), Ms. Picker's representation did not "f[a]ll below
an objective standard of reasonableness." (*See Jacobs*, 395 F.3d
at 102.)  The choices of (a) withdrawing Petitioner's appellate
action or (b) not opposing the State's motion to annul *were*, in
fact, the options available to him after he exercised his choice
to pursue appeal. Counsel cannot be faulted for presenting
Petitioner with the paths that were, in fact, open to him.

For all of these reasons, the state court's opinion that
Petitioner had not demonstrated *Strickland*'s deficient
performance prong was not contrary to federal precedent.

Second, as to *Strickland*'s prejudice prong, Petitioner has
not shown that "there is a reasonable probability that the
result of the [case] would have been different absent the
deficient act or omission." *Hinton v. Alabama,* 134 S. Ct. 1081,
1083 (2014) (per curiam). An appeal of the court's decision
vacating the original plea agreement would not have been
successful since it was the very relief that Petitioner himself
was seeking; when given the option of maintaining the original
plea agreement, Petitioner clearly and unequivocally chose to
withdraw from it. (ECF 6-48 at 5-6.) *See State v. Jenkins*, 840

A.2d 242 (N.J. 2006) ("when a defendant asks the court to take his proffered approach and the court does so, we have held that relief will not be forthcoming on a claim of error by that defendant").

In addition, the State in fact had a right to annul the first plea agreement once defendant filed an appeal in January 2004. (New Jersey Rule of Court 3:9-3(d).)

In light of these circumstances, Petitioner cannot show that there is a reasonable probability that, but for counsel's performance as to the withdrawal of Petitioner's original plea, his expressed election to pursue appeal, and the State's motion to vacate the original plea, the result of his case would have been different – *i.e.*, that he would have received a sentence less than twenty years. Therefore, the Appellate Division's opinion that Petitioner had not demonstrated *Strickland*'s prejudice prong was not contrary to federal precedent.

In sum, Petitioner has failed to show that he is entitled to federal habeas relief on his IAC Claim. Ground Two of the Petition is denied.

### C.    **Ground Three: Petitioner's Double Jeopardy Claim**

Petitioner alleges a violation of the constitutional guarantee against double jeopardy from Judge Smith's annulment of the original plea agreement, contending as follows: "Judge Smith annul[l]ed the plea agreement pursuant to R. 3:9-3(a).

27

[T]he plea was annulled illegally and in bad faith. There was no appeal on record and therefore R. 3:9-3(a) did not apply. The judge's decision was in bad faith and caused this [P]etitioner to suffer the harassment of a second trial proceeding and ultimately a harsher sentence." (ECF 1 at 9.)

Petitioner did not assert a double jeopardy claim on direct appeal of his conviction. (ECF 6-15; ECF 6-32.) And although his PCR petition "reserve[d] the right to add additional claims" in his PCR proceedings, Petitioner's PCR application did not assert a double jeopardy claim (ECF 6-35) and his assigned counsel did not allege a double jeopardy violation, either. (ECF 6-36.) Therefore, Petitioner's double jeopardy claim was not fairly presented to all three levels of the New Jersey state courts and thus appears unexhausted.[5] However, this Court can nevertheless deny unexhausted claims on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the

---

[5] A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d. Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id*. (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here"). In other words, this Court is free to deny Ground Three on the merits, and that is what the Court now does for the following reasons.

The general rule is that "'a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *United States v. Broce,* 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson,* 467 U.S. 504, 508 (1984)). This rule is predicated on the idea that a valid guilty plea "removes the issue of factual guilt from the case." *Menna v. New York,* 423 U.S. 61, 62 n. 2, (1975). Here, Petitioner was convicted in 2003 after a guilty plea (ECF 6-1); next, after he obtained the relief he sought (i.e., having his first plea vacated), he then pleaded guilty a second time in 2008. (ECF 6-30.) Accordingly, Petitioner's guilty pleas waived constitutional claims that became irrelevant upon reliable establishment of factual guilt by his pleas.

An exception to this general rule, however, is that a defendant's "guilty plea does not foreclose a subsequent challenge where the defendant challenges the right not to be haled into court at all." *Broce,* 488 U.S. at 574–75 (internal quotation marks omitted). Petitioner's pleas fit into this

narrow exception since he argues that the charges to which he pleaded guilty are ones "which the State may not constitutionally prosecute," *id.* at 575 (internal quotation marks and citation omitted), and since his claim does not rely on evidence outside the "indictments and the existing record," *id.* at 576. In arguing that his second sentencing in 2008 for robbery violated double jeopardy, Petitioner does not challenge his factual guilt, but instead asserts that the State was constitutionally barred from prosecuting him in 2008 and obtaining a twenty-year sentence against him that was higher than his seventeen-year first sentence in 2003. Moreover, Petitioner relies only on the existing record and does not "seek further proceedings at which to expand the record with new evidence." *Broce,* 488 U.S. at 575. This Court may resolve Petitioner's claim solely by reviewing the face of the indictment, the guilty plea, and the judgments entered against Petitioner "without any need to venture beyond [the existing] record." *Id.* Thus, Petitioner's double jeopardy claim was not waived merely by his entry of a plea of guilty. The Court now proceeds to consider his double jeopardy claim in Ground Three.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Three separate guarantees are "embodied in the Double Jeopardy

Clause: It protects against a second prosecution for the same offense after acquittal [or mistrial], against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 306–07 (1984); *see also Illinois v. Vitale,* 447 U.S. 410, 415 (1980). It does not, however, prohibit the resentencing of a convicted defendant unless the defendant has developed a legitimate expectation of finality in his original sentence. *United States v. DiFrancesco,* 449 U.S. 117, 139 (1980) (the Double Jeopardy Clause respects defendants' legitimate expectations as to the length of their sentence).

Here, Petitioner's double jeopardy claim in Ground Three is foreclosed by the fact that "there can be no legitimate expectation of finality in a sentence and conviction which the defendant appeals." *United States v. Murray*, 144 F.3d 270, 275 (3d Cir. 1998) (internal citations omitted). Here, Petitioner chose to pursue direct appeal of his first sentence, after being cautioned by his counsel and Judge Smith that he could receive a sentence "vastly in excess of" his original seventeen-year sentence (ECF 6-48 at 3, 6) by virtue of electing to appeal. Thus, he could not have developed a legitimate expectation of finality in his 2003 seventeen-year sentence. To the contrary, Petitioner himself sought to challenge its finality.

Accordingly, no violation of double jeopardy occurred when he received a twenty-year sentence in 2008.

Thus, Ground Three is without merit and is denied.


## V. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), Petitioner may not appeal from a final order in this habeas proceeding where Petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A [habeas petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.


## VI. CONCLUSION

For the reasons stated above, the Petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


**December 12, 2018**                              **s/ Jerome B. Simandle**
Date                                               JEROME B. SIMANDLE
                                                   U.S. District Judge